IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**FILED**
APR 2 2002
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

RF DELAWARE, INC., )
)
    Plaintiff, )
)
v. ) Case No.: CV-01-PT-0348-M
)
PACIFIC KEYSTONE TECHNOLOGIES, )
INC., et al., )
)
    Defendants. )

**ENTERED**

APR 2 2002

## MEMORANDUM OPINION

This cause comes to be heard on plaintiff RF Delaware, Inc.'s ("RFD") Motion for Leave to Supplement Memorandum in Support of RF Delaware, Inc.'s Third Motion for Partial Summary Judgment and in Opposition to Pacific Keystone Technologies, Inc.'s Motion for Partial Summary Judgment that it has Committed no Acts of Infringement filed on February 14, 2002.

### ARGUMENTS

RFD requests leave of the court to supplement its memorandum to address two limited issues. The first issue addresses when Pacific Keystone Technologies, Inc. ("PKT") had knowledge of RFD's patent rights. The second issue addresses acts of PKT after January 2, 2001. RFD's main justification in support of its request is that it recently acquired documentation and testimony that directly addresses these issues. Specifically, it notes that one of the principal documents relied upon in its supplement was never produced by PKT, although it requested such documents pursuant to discovery requests. The document in question, a facsimile letter dated October 4, 2000 from Mr. Michael O'Connor, director of PKT, to Mr. Vern

136

Lucy, President of Ondeo, was not produced until January 24, 2002.[1] RFD asserts that because the bulk of the evidence relied upon in its supplemental memorandum was not produced by PKT prior to its deadline for filing a response to PKT's Motion for Partial Summary Judgment, it seeks leave to supplement it original memorandum.

RFD submits seven exhibits addressing the first issue. Exhibit 1 is a facsimile letter from Michael O'Connor to Vern Lucy dated October 4, 2000. In the letter, Mr. O'Connor states the following:

> On an unrelated issue Mike Morris mentioned he has talked to you about the Roberts Filter patent dispute. Thank you for your advice on the matter. Westech has also advised they have been contacted by Roberts' lawyer. We probably are on his list and so we have done some research through the Canadian Patent office. I thought you might find the attached of interest.

Exhibit 2 is excerpts of the deposition of Vern Lucy. In his deposition, Mr. Lucy discusses his conversation with Mike Morris[2] at the June 2000 AWWA conference in Denver, Colorado:

> I was at the conference and took the opportunity to inquire because it was a time when we were in discussion with Roberts Delaware and I went to ask them concerning what knowledge they may have of the use of the technology that was being questioned of us relative to where it may have been used knowing that they were in this business and where it had been used in the U.S.

Exhibit 3 is a business card of Mike Adkins, Vice President, PKT. Exhibit 4 is a facsimile letter from Mike Adkins to Graham Medworth, Westech, dated October 3, 2000.[3] In the letter Mr. Adkins states that "Mike Morris, our Pacific Keystone President, is expecting some information

---

[1] According to RFD, it learned of this document as a result of a third party subpoena on Ondeo Degremont, Inc. Furthermore, it explains that the date the document was produced, January 24, 2002, was well after the time period for filing its opposition to PKT's motion for partial summary judgment.

[2] Mike Morris is the President of PKT.

[3] From the face of the document, it appears that Mike Morris was sent a carbon copy of this facsimile letter.

soon from IDI." Exhibit 5 is an email sent by Vern Lucy to Robert Winslow, Assistant Treasurer, Infilco Degremont, dated September 28, 2000. The email reads as follows: "Bob I had a call from Pacific Keystone - Mike Morris ph. 360/ 886-1396 asking about our settlement with Roberts. I told him I would have you call him." Exhibit 6 is a document entitled "Westech Record of Telephone Conversations." It is a hand written message of a purported conversation with Mike Morris dated December 28, 2000. It indicates that an employee of Westech and Mike Morris discussed the "backwashing technique" employed by RFD. Finally, Exhibit 7 is a letter from Robert Winslow to Mike Morris dated December 27, 2000. In the letter Mr. Winslow indicates that he mailed Mr. Morris a copy of the Virginia district court opinion regarding RFD's '124 patent.

RFD submits two exhibits addressing the second issue. Exhibit 8 contains copies of two purchases orders submitted by BCA Industrial Controls ("BCA") to CEI Filter Media ("CEI"). The purchase orders indicate that on July 31, 2001, BCA requested that CEI ship orders of filter sand to the Millport Water Treatment Plant and to the Warren Springs Water Treatment Plant. Exhibit 9 contains copies of CEI's invoices confirming these purchases and shipments.

In response, PKT asserts that the supplement requested by RFD is of no help to it and should be disregarded. PKT argues that whether it had a vague knowledge that RFD had "patent rights" does not matter. It contends that legally there can be no contributory infringement or infringement by active inducement unless it was aware of the actual content of RFD's patents and what they covered. PKT claims that RFD has produced no evidence that it had such knowledge of RFD's patents prior to January 2, 2001. Specifically, it notes that Exhibits 1-7 do not show knowledge by PKT of RFD's patents. According to PKT, these Exhibits only indicate that PKT was aware of RFD's legal dispute with Infilco Degremont, not that PKT knew what the

3

patents contain or cover. Addressing Exhibits 8 and 9, PKT notes that there is no evidence that the sand has been installed or used. Furthermore, it claims that the sand would be used in a monomedia filter that has no underdrain support gravel and does not infringe RFD's patents. Thus, it concludes that Exhibits 8 and 9 do not address infringing activity.

RFD makes three primary arguments in reply. First, it points out that PKT does not dispute that the information was recently discovered or claim that RFD has failed to act diligently in bringing the new information to the attention of the court. Second, it claims that PKT's argument that one must have a copy of the patent and reviewed the same to have actual knowledge is legally flawed. In support of this proposition RFD cites *Great Northern Corporation v. Davis Core & Pad Company, Inc.*, 782 F.2d 159, 165 (Fed. Cir. 1986). According to RFD, the Federal Circuit held in *Great Northern* that the defendant had actual knowledge of the patent at issue when it was advised in a meeting that there was a similar patented product on the market but that the patent was invalid. Finally, RFD asserts that PKT's argument regarding the shipment of media is meritless. RFD contends that 35 U.S.C. § 271(b) defines induced infringement very broadly. It claims that the shipments of media, an essential component of the patented operation, constitutes induced infringement.

4

## CONCLUSIONS OF THE COURT

Without deciding one way or the other as to the relevance, significance or effect of the documents, the court will allow their submission.

This 29th day of March 2002.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

5