IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED
MAY 30 2002
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| RF DELAWARE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: CV-01-PT-0348-M |
| ) | |
| PACIFIC KEYSTONE TECHNOLOGIES, ) | |
| INC., et al. ) | |
| ) | |
| Defendants. ) | |

ENTERED
MAY 30 2002

**MEMORANDUM OPINION**

This cause comes to be heard on defendants Pacific Keystone Technologies, Inc., BCA Industrial Controls, Inc., and Michael Morris' Motion for Leave to File First Amended Answer and Counterclaim to First Amended Complaint filed on January 23, 2002.

**ARGUMENTS**

Pacific Keystone Technologies, Inc. ("PKT"), BCA Industrial Controls. Inc. ("BCA"), and Michael Morris ("Morris") move under Rule 15(a) of the Federal Rules of Civil Procedure for leave to file a First Amended Answer and Counterclaim to the First Amended Complaint of plaintiff RF Delaware, Inc. ("RFD"). According to the defendants, the changes add allegations of inequitable conduct which are proposed as an affirmative defense and as a counterclaim. Specifically, the defendants allege that the inventors of the patents-in-suit, Anabelle Kim ("Kim") and R. Lee Roberts ("Roberts"), as well as the attorney that prosecuted the patent applications, Martin L. Faigus ("Faigus"), were aware of three material articles that were not disclosed to the Patent and Trademark Office ("PTO").[1] The defendants claim that the

---

[1] According to the defendants, the Regan, Hewitt, and Amirtharajah articles specifically address the backwash procedure utilized in the '630 and '124 patents, i.e., the air flow and minimum fluidization velocity rates. The defendants have previously alleged inequitable conduct; just not this specific conduct.

156

information in the proposed changes only came to their attention after they deposed Kim on December 12, 2001.

The defendants note that under Rule 15(a), leave to amend pleadings "should be freely given when justice requires." They contend that the Eleventh Circuit has established the policy of freely and liberally allowing amendments to pleadings: "In the absence of undue delay, bad faith, dilatory motive or undue prejudice, leave to amend is routinely granted." *Forbus v. Sears Roebuck & Co.*, 30 F.3d 1402, 1405 (11th Cir. 1994), *cert. denied*, 513 U.S. 1113 (1995). They claim that there has been no undue delay since Kim was deposed in mid-December and the transcript has been recently received and reviewed. They contend that there is no bad faith present because the deposition testimony provides them with a good faith belief that they can prove facts of inequitable conduct. Finally, they note that there is no possibility of prejudice to RFD because the allegations are directed to acts by persons affiliated with RFD and that any discovery required could be easily completed within the discovery schedule.

RFD makes two primary arguments in response. First, it opposes the motion to amend because it is based on the wrong legal standard and the correct standard has not been satisfied. Second, it argues that if this court grants the motion, it moves under Rule 56 for partial summary judgment on the defendants' proposed affirmative defense and counterclaim.

Turning to RFD's first argument, it states that the defendants' motion to amend is "legally flawed" because it is based on Rule 15(a). According to RFD, the appropriate legal standard is set out in Rule 16(e), since this court entered a scheduling order on July 19, 2001, requiring defendants to file any and all amendments to the pleadings within fifty days of the

2

order. RFD states that the deadline for amending the pleadings expired on September 7, 2001.[2] Consequently, it argues that the defendants must show "good cause" before Rule 15(a) is even considered.

RFD argues that the defendants cannot satisfy the "good cause" standard for several reasons. First, it notes that counsel for the defendants did not issue interrogatories or document requests until August 6, 2001, six months after this suit was initiated. Second, it states that counsel for the defendants did not take a single deposition until October 23, 2001. Third, RFD claims that counsel was aware of these three articles as early as April of 2001. It states that the articles were identified in Exhibit 13 of Kim's deposition in the litigation between RFD and Infilco Degremont, Inc. According to RFD, it provided counsel for the defendant with a copy of Kim's deposition with all exhibits prior to the preliminary injunction hearing held in this case on April 18 and 19, 2001. Fourth, RFD argues that despite the defendants' "clear knowledge" of Kim's deposition, counsel for the defendants never informed RFD that he intended to lodge an inequitable conduct defense based on these articles. RFD notes that it wrote counsel for the defendants on August 27, 2001 and requested that counsel provide a detailed explanation of the defense of inequitable conduct. According to RFD, counsel for the defendants failed to mention these three articles. Finally, RFD claims that it wrote counsel for the defendants prior to Kim and Faigus' depositions and asked him to identify any and all documents the defendants relied upon to support the defense of inequitable conduct. RFD asserts that these articles were never identified in the response.

---

[2] According to RFD, the law in the Eleventh Circuit provides that motions to amend pleadings filed after the deadlines set forth in a scheduling order are governed by the more stringent "good cause" standard of Rule 16(e). *See Sosa v. Airport Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998).

Under these circumstances, RFD argues that it has been materially prejudiced by the defendants' "deliberate concealment" of the inequitable conduct defense based on these articles. It states that it was not able to question Faigus during his deposition concerning these documents.[3] RFD contends that it has no ability to compel Faigus to appear at trial and that this court has no jurisdiction over him. Additionally, RFD claims that it has been materially prejudiced as to Kim because it cannot compel her to appear at trial because she left the company's employ in 1991. Finally, RFD states that it has been prejudiced by the fact that it has already moved for summary judgment on the issue of enforceability of the '124 and '630 patents.

Turning to its second argument, RFD claims that even if this court grants the defendants' motion, it is entitled to partial summary judgment on the proposed basis of inequitable conduct. RFD contends that the defendants have no basis for alleging that Kim committed inequitable conduct during the prosecution of the '124 and '630 patents because she left the employ of RFD on April 10, 1991. Thus, it claims that she had no involvement with the patent applications.[4] Furthermore, RFD states that the defendants have no evidence that Faigus and Roberts ever reviewed any of the three articles. Consequently, it claims that the defendants cannot establish that they knew the articles were material or intended to deceive the PTO.[5]

The defendants raise three main arguments in reply. First, they claim that the evidence is

---

[3] RFD asserts that the articles were not even raised during Faigus' deposition.

[4] RFD notes that the patent application for the '124 patent was filed on January 13, 1992. Further, it provides that the '630 patent was issued from a patent application filed after this date.

[5] In the event that this court denies RFD's motion for partial summary judgment, it requests leave to seek the depositions of Kim and Faigus at PKT's expense.

sufficient to support the allegations of inequitable conduct. They state that Kim testified, for the first time in her deposition on December 12, 2001, that she had actual knowledge of the three articles in 1990. The defendants dispute RFD's allegation that Kim testified about these articles in her deposition for the IDI litigation.[6] As for Faigus' knowledge, defendants state that Kim admitted in her December deposition that she prepared an invention disclosure in 1990, admitted that she referenced the three articles in this disclosure, and admitted that she submitted the disclosure to Faigus. As for Roberts' knowledge, defendants provide that Kim testified in the December deposition that she gave copies of the three articles and a handwritten memo to Roberts in 1990. According to the defendants, these admissions were the first evidentiary basis it had for alleging that Kim, Roberts, and Faigus were aware of this material prior art. Since the admissions were procured in December of 2001, the defendants argue that they acted diligently to amend the pleadings.

Second, the defendants argue that RFD will not be materially prejudiced by the amendment. They contend that Faigus and Kim were asked by them about the articles in their December depositions. They state that RFD had every right to question them concerning these subjects but chose not to. Thus, they claim that RFD has no right to claim prejudice because it failed to do what it had every opportunity to do. Additionally, they note that the discovery period is still open and RFD has the ability to obtain whatever evidence it needs from Faigus and Kim.

Third, the defendants claim that summary judgment is inappropriate because there is

---

[6] The defendants claim that Kim made no reference to these articles and did not admit to having knowledge of them in that deposition.

evidence of all the elements of inequitable conduct.[7] In support of this proposition, the defendants claim that all three articles are material prior art. They note that Kim stated in her 1990 memo that "[t]he attached 3 publications show that cleaning of granular media occurs with a combination of air scour and subfluidization water flow, exactly the condition (albeit fortuitous) we have in the Pacer RF."[8] Next, they claim that the second element is satisfied because all three articles were known to Kim, Faigus, and Roberts. Not only do they claim that these articles were known, they state that Kim's memo is evidence that the articles were known to be material. The memo provided by Kim to Roberts states that the articles disclose "exactly the condition (albeit fortuitous) we have in the [patented invention]." Further, they point out that Kim listed these articles as the only prior art on the invention disclosure she provided to Faigus in 1990. Finally, the defendants state that third element is satisfied because these articles were not disclosed to the PTO. They assert that where there is a high level of materiality and clear proof that such materiality was known or should have been known, an inference of intent to mislead can be drawn. *Relying on Manitowoc*, 835 F.2d at 1416; *Semiconductor Energy Lab v. Samsung Electronics*, 204 F.3d 1368, 1375 (Fed. Cir. 2000).

---

[7] According to the defendants, inequitable conduct requires clear and convincing proof of (1) prior art or information that is material; (2) knowledge chargeable to the applicant of that prior art of information and of its materiality; and (3) failure of the applicant to disclose the prior art or information resulting from an intent to mislead the PTO. *See FMC Corp. v. Manitowac Co.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987).

[8] Addressing the '630 patent, the defendants note that the third article specifically discloses "simultaneous air scour and subfluidization water wash" with the air flow rate in the range of 1-9 scfm/ft$^2$. As for the '124 patent, they note that the first article discloses "combinations of air with simultaneous subfluidization water flows" which are less than 20% of the minimum fluidization velocity. They also point out that the second article discloses "combinations of simultaneous air and subfluidization water flows" with "subfluidization water flows of 25-50% of Vmf [minimum fluidization velocity]." Finally, they assert that these requirements are disclosed in the third article: "simultaneous air scour and subfluidization water wash" with "water flows of about 20%-45% of minimum fluidization."

6

## CONCLUSIONS OF THE COURT

Applicants and their representatives are required to prosecute patent applications in the PTO with "candor, good faith, and honesty." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995). A valid defense to the enforceability of a patent is inequitable conduct on the part of the applicant. Inequitable conduct includes "affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Id.* When an individual alleges inequitable conduct stemming from a failure to disclose prior art, the individual must offer "clear and convincing proof of the materiality of the prior art, knowledge chargeable to the applicant of that prior art and of its materiality, and the applicant's failure to disclose the prior art, coupled with an intent to mislead the PTO." *Id.*

The information withheld must meet the thresholds of both materiality and intent. The standard for materiality of patents reads as follows:

> [I]nformation is material to patentability when it is not cumulative to information already of record or being made of record in the application, and (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or (2) It refutes, or is inconsistent with, a position the applicant takes in: (i) Opposing an argument of unpatentability relied on by the Office, or (ii) Asserting an argument of patentability.

*Id.* at 1179 n.8. The intent element must also be satisfied. The advocate need not present direct evidence of intent. *Id.* at 1180. In fact, intent is "most often proven by a showing of acts, the natural consequences of which are presumably intended by the actor." *Id.* Typically, intent must be "inferred from the facts and circumstances surrounding the applicant's conduct." *Id.* at 1180-81. With that said, the "alleged conduct must not amount merely to improper performance of, or omission of, an act one ought to have performed. Rather, clear and convincing evidence

must prove that an applicant had the specific intent to accomplish an act that the applicant ought not to have performed, *viz.*, misleading or deceiving the PTO." *Id.* at 1181.

The court will grant the defendants' Motion for Leave to Amend on the following conditions:

That defendants arrange, within three months, for and schedule the depositions of Faigus and Kim and that they pay the travel expenses, but not the fees, of the plaintiff's attorney (one) to attend said depositions. The expenses need not be advanced, but must be paid within 15 days of receipt of a reasonable bill for said expenses.

This 30 day of May 2002.

ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**

8